IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEREMY T. SPELL,

  Petitioner,

v.

S. BROWN,

  Respondent.

Civil Action No.:  SAG-24-1541

## MEMORANDUM OPINION

    Petitioner Jeremy T. Spell, who is incarcerated at the Federal Correctional Institution-Cumberland ("FCI-Cumberland"), filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 alleging his outgoing mail was improperly withheld; there was an unlawful delay in issuing an incident report in connection with the content of his mail; and he was not provided with his requested staff representative at his disciplinary hearing. ECF 1. Respondent's Court-ordered response seeks dismissal of the petition because Spell received all process due in his disciplinary hearing and his claims regarding mail, commissary, and visiting privileges are not cognizable under § 2241. ECF 7. Spell filed a Response to Respondent's Response to Show Cause. ECF 9. Respondent filed a Reply. ECF 12. Spell also filed a Motion for Leave to file a Surreply. ECF 14. Because the matters asserted have been fully briefed, Spell's motion shall be denied. For the reasons stated below, the petition shall be dismissed.

## BACKGROUND

    Spell states that mail leaves FCI-Cumberland every day except for holidays and weekends; however, his mail was held for 12 days without notice. ECF 1 at 6. BOP issued him an incident report after 12 days. *Id*. He states that the "constitutional rights of prisoners under the new approch [sic]" requires that an inmate whose correspondence is held by BOP staff receive notice "and

censorship must be done." *Id*. He adds that prison officials are not permitted to censor outgoing prisoner correspondence "to eliminate unflattering or unwelcome opinions of factually inaccurate statements." *Id*.

Spell claims that the incident report he received was not prepared and served within 24 hours of staff becoming aware of the withheld letter as required by BOP policy. ECF 1 at 6. Spell states that he became aware of the time delay when Mr. D. Holler requested an extension of time to hold a meeting of the Unit Disciplinary Committee ("UDC"). *Id*. The request for extension states that staff became aware of the letter on August 3, 2023, but Spell did not receive the incident report until August 15, 2023. *Id*.

The incident report was referred to a Disciplinary Hearing Officer ("DHO") for a hearing. Spell claims that he asked for a staff representative twice but was not permitted to have one. ECF 1 at 6. Rather, according to Spell, the DHO threatened him and forced him to sign a waiver of his request for a staff representative. *Id*. Spell explains that the threat was he would have to sit in the Segregation Housing Unit ("SHU") for 30 more days if he did not waive his request. *Id*.

The incident report was written by Special Investigative Service ("SIS") Lt. M. Brumage, who explains that he intercepted a letter being sent by Spell which was in the mail room. ECF 1-1 at 1. In the letter Spell stated that:

> I have a way to make us both some good money, no risk to you long as you follow my directions.
>
> . . . go online and google spicechem.com, safe the first three sites that comes up. Then go to Reddit.com and look up the three sites saved on Reddit.com, find which site has the best reviews in liquid form and that have the chemical abbafubucoma in it.
>
> . . .make sure it's alcohol base liquid. Once you get that part done tell me the price so I can send you the money to order it and once its [sic] ordered I'll let you know what to do from there. Again its no risk for you and we both will

>   make good money that's [a] promise.  This not something to go into over the
>   phone so when I ask you certain things just answer what I ask you.

*Id*.  Lt. Brumage states that "[t]he letter clearly indicates that Inmate Spell is attempting to introduce narcotics utilizing the mail system." *Id*.[1] Spell was charged with violating "Prohibited Act Codes" 199 and 111 (("199 – disruptive conduct – greatest) Most like 111 – introduction drugs/alcohol.") *Id*.

When Spell was served with a copy of the Incident Report, he denied writing the letter and opined that "someone else is using my name and number." ECF 1-1 at 3. On the Notice of Discipline Hearing Before the DHO, Spell requested a staff representative, Officer Crabtree. *Id*. at 4. A Unit Disciplinary Committee ("UDC") hearing was held on August 20, 2023, and the matter was referred to the DHO for further hearing due to the serious nature of the charges. ECF 7-1 at 4, ¶ 8. Prior to the DHO Hearing, DHO Darrell Huff returned the incident report to SIS Lt. Brumage to provide an explanation regarding the meaning of "abbafubucoma." *Id*. at ¶ 10.

The incident report was re-written with the only significant change in the report being as follows.

>   It was determined that the word "abbafubucoma" written by inmate Spell was a
>   typo.  An open-source internet search determined that he was intending to use
>   the word ab-fubinaca, which is a psychoactive drug that acts as a potent agonist
>   for the cannabinoid, otherwise known as K2.  It was also discovered via an open-
>   sourced search that AB-FUBINACA is a schedule I controlled substance under
>   the federal Controlled Substances Act.

ECF 1-2 at 1.

The request for an extension indicates that staff became aware of the incident on August 3, 2023 and that Spell received the incident report on August 15, 2023. ECF 1-3 at 1. Lt. Brumage addresses the delay in his declaration. ECF 7-2. He states that the mail room staff placed Spell's

---

[1] The full letter is included in the record at ECF 7-1 at 14-17.

3

letter in the SIS mailbox for review and that is common practice for them to do so whenever they read or find something suspicious when inspecting the mail. *Id*. at 3, ¶¶ 3 and 4. Lt. Brumage explains that "SIS staff typically review the mail that has been placed in their mailbox on a weekly basis depending on their schedules." *Id*. at ¶ 5. He states that he received Spell's letter on August 15, 2023, reviewed the letter, and wrote the incident report on the same date. *Id*. at ¶¶ 6-8.

As with the Notice of Discipline Hearing served on Spell on August 20, 2023, Spell requested Officer Crabtree as his staff representative when served with the revised incident report on September 12, 2023. ECF 1-4 at 1. DHO Darrell Huff states in his declaration that Spell voluntarily waived his request for a staff representative at the September 12, 2023 hearing and he denies telling Spell that if he didn't waive it, he would spend more time in the SHU. ECF 7-1 at 5, ¶ 16, *see also* ECF 7-1 at 39 (signed waiver).

Following a hearing on September 15, 2023, Spell was found guilty of the rule violation. ECF 1-12 at 7. Huff's decision reads as follows:

> You denied the charge before the DHO stating "I wrote it but not for what they claim. I sent the letter to a friend that is in the navy she is a nurse. We are trying to open a dispensary. I know how to extract THC from marijuana, so we were going to take marijuana, extract the THC and put AB-FUBINACA on it to sell to make money for the dispensary. AB-FUBINACA is a chemical that effects your mind like THC."
>
> Your contention . . . was considered but insufficient to excuse you from the offense. The fact remains you composed a letter providing partial instructions that would lead any reasonable person to conclude that you were in the initial stages of making plans to [sic] facilitating the introduction of an illicit substance that mimics the effects of a banned drug or narcotics that cannot be detected thru normal testing procedures. It is not an uncommon practice for inmates to facilitate the introduction of illicit substances through social mail or fictitious legal mail utilizing ingredients of this type to produce a product, that mimics a psychoactive substance which affects your mood, consciousness and or behavior.
>
> In considering your defense, the DHO cannot ignore that in this letter that you admit to writing, you state to the intended recipient two times that there is no

4

> risk to her. If this were truly a legitimate business transaction as you claim, then there should have been no concern for anyone to have any risk. Additionally, in this letter you state this is not something to go into over the phone so when I ask you certain things just answer what I ask you. Again, the DHO believes that if this were related to a legitimate business transaction or partnership you would have no concern in speaking to the recipient over the phone. Instead, you clearly tell her this should not be spoken about over the phone and if it is, she should answer only your specific questions. The only logical reason the DHO can find for you to instruct her to respond in this manner is that you were concerned she may try to speak to you about the topic over the phone and you were attempting to influence or limit her conversation on this topic so as your actual reason for writing this letter may be exposed.
>
> The DHO considered your written statement. The issue of censorship, staff not mailing out the letter and not receiving a rejection notice are irrelevant to the DHO hearing. As the DHO's role is to determine if you committed the charged misconduct. You further claim you did not have any money to send and claim it was only freedom of speech, however, regardless of whether or not you possessed [financial] means it is clear to the DHO you composed [sic] this in the contents of the letter. Additionally, the DHO believes you minimized the risk involved within the letter to encourage the recipient to follow through with the scheme to introduce an illicit substance into the correctional facility.
>
> The DHO acknowledged remarks you made or did not make at the previous stages of the discipline process. Specifically, you made no comments to the investigating official upon the issuance of the . . . incident [report] however, [at] the UDC hearing you focus your argument on the date and time staff became aware and whether or not the word AB-FUBINACA was a typo. The DHO believes if this was a legitimate business interest as you claim you would have been forthcoming with the information at the first opportunity present[ed] to you. Instead you waited ten (10) days to present you[r] explanation at the DHO hearing.

ECF 1-12 at 7-8. DHO Huff acknowledged that Spell did not make a request for an illicit substance to be sent into the prison, but expressed his belief that the letter was just the "beginning stages of the introduction attempt." *Id*. at 8. Spell's explanation was rejected as "nothing more than an attempt to distance yourself from the consequences of your actions." *Id*. As a sanction, Spell was disallowed 41 days of good conduct time ("GCT"), 15 days of disciplinary segregation, 6 months loss of commissary privileges, and 6 months loss of visitation privileges. ECF 7-1 at 6, ¶ 20.

5

Huff explains in his declaration that he did consider Spell's written statement submitted at the hearing, but that the statement focused on "allegations of censorship, staff not mailing out his letter, and not receiving a rejection notice" but "these claims are irrelevant to the DHO hearing as the DHO's sole role is to determine if [Spell] committed the charged misconduct." ECF 7-1 at 6, ¶ 18, *see also* ECF 7-1 at 41-43 (written statement).

Spell was provided with the written decision and advice on his right to appeal on November 9, 2023. ECF 7-1 at 49. Spell filed an appeal on December 5, 2023, asserting as error that his letter was held for 12 days without providing him with notification and without an investigation. ECF 1-12 at 10. He further alleged that his requested staff representative was never notified he had asked for her to be his representative and claimed he was "made to sign something saying I no longer needed them." *Id*. He stated that he was told he would be kept in the SHU for another 30 to 45 days and the failure to provide him with a staff representative meant he could not access relevant materials for his hearing. *Id*. Spell further claimed that DHO Huff told him he would not be found guilty of a 111-code violation because there was no evidence supporting the introduction of the banned substance into the prison. *Id*. Spell then received the DHO's decision 60 days after the hearing finding him guilty of the rule he was told he did not violate. *Id*. He claims all of these alleged deficiencies are a violation of his due process rights. *Id*.

The Regional Director for the Mid-Atlantic Region, C. Gomez, authored the response to Spell's appeal. ECF 1-12 at 3. The response states that Spell "did not appeal the DHO's decision you committed a prohibited act." *Id*. The BOP Program Statement 5270.09 requires the DHO to consider all evidence presented at the hearing and the decision must be based on "at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." *Id*. Here, DHO Huff, in Gomez's estimation, relied on the greater weight of evidence and

"accurately and adequately explained . . . the specific evidence relied on to find [Spell] committed the prohibited act." *Id*. Spell's allegation that his mail was held for 12 days was rejected; there was no evidence that the delay hindered Spell's ability to prepare a defense; there was no evidence that Spell was told he would spend more time in the SHU if he didn't waive his request for representation; and the "required disciplinary procedures were substantially followed." *Id*.

In his appeal of Gomez's decision, Spell maintained that Gomez showed bias against him because "he did not look into the facts what so ever concerning my appeal." ECF 1-12 at 2. He states that the incident was "never about incoming mail" that was supposed to be provided to him and that the records clearly show that the "incident happened on 8/3/23" but he was not told about it until August 15, 2023. *Id*. Timothy Barnett, Administrator of National Inmate Appeals, denied the appeal and noted that "the determination of the DHO is reasonable and supported by the evidence." *Id*.

As relief, Spell seeks to have the incident report expunged, reinstatement of the GCT that was lost, and monetary damages for spending time in the SHU as well as having his visits and commissary taken for 180 days. ECF 1 at 7. In his Opposition Spell states that he only wants the incident report expunged and the 41 days of GCT restored, explaining that his visiting privileges and his commissary have already been reinstated. ECF 9 at 1.

## STANDARD OF REVIEW

A § 2241 petition attacks the manner in which a sentence is executed. *See* 28 U.S.C. § 2241(a), *see also Jones v. Hendrix*, 599 U.S. 465, 475 (2023) (§ 2241 relief is available when prisoner "might wish to argue that he is being detained in a place or manner not authorized by the sentence . . . ."). Respondent does not raise any objection to Spell's claim regarding the alleged due process violations in connection with his disciplinary proceedings but maintain that to the

7

extent Spell is attempting to challenge the conditions of his confinement, he has chosen the wrong vehicle in which to raise it. Whether a habeas petitioner may raise claims regarding the conditions of his confinement is a matter that has been left unsettled.

The Supreme Court left open the question of whether matters concerning "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners" may be addressed via a petition for writ of habeas corpus. *Ziglar v. Abassi*, 582 U.S. 120, 144-45 (2017) (differentiating claims of "individual instances of discrimination . . . which due to their very nature are difficult to address except by way of damages actions after the fact."); *see also Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal.").

The Fourth Circuit has stated in unpublished decisions that claims challenging conditions of confinement cannot be brought in habeas petitions. *See, e.g., Wilborn v. Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (per curiam) (finding "[t]his case presents no basis to deviate from our previous holdings" and concluding that inmate's claim to have the BOP reconsider where he was housed is not one that would fall within the scope of habeas); *see also Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017) (per curiam) (holding that an inmate's challenge to his transfer to a maximum-security facility was "not a cognizable § 2241 claim, because th[e] petition challenge[d] the conditions of his confinement, not its fact or duration"). However, the Fourth Circuit has also "recognized that 'even when the Court concludes that a claim is not cognizable under § 2241, the Court can *sua sponte* consider the merits as a civil rights claim in some circumstances.'" *Farabee v. Clarke*, 967 F.3d 380, 395 (4th Cir. 2020), quoting *Wilborn v. Mansukhani*, 795 F. App'x 157, 164 (4th Cir. 2019) (citing *Wilwording v. Swenson*, 404 U.S. 249,

8

251 (1971) (per curiam) (recognizing that courts may exercise discretion to construe a habeas petition attacking conditions of confinement as a civil rights claim)), *see also Aamer v. Obama*, 742 F.3d 1023, 1036 (D.C. Cir. 2014) (noting the basic principle that "[h]abeas is at its core a remedy for unlawful executive detention") (citation omitted).

Here, Spell raises both a claim that his disciplinary proceeding did not meet constitutional requirements and a claim that his First Amendment right of free speech has been improperly thwarted. Spell abandons his request to reinstate his commissary and visitation privileges because the period of time they were suspended has since expired. Unlike the broad-reaching policy decisions that effect hundreds of prisoners which the Supreme Court has indicated are better suited for examination under habeas law, the withholding of Spell's letter and imposing sanctions on him affects only him. Nevertheless, his First Amendment claim will be analyzed as a civil rights claim as it is uniquely entwined with his due process claim.

## ANALYSIS

**A.     Due Process claim**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have

non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564-66, 592.

Spell's assertion that his rights were violated by the 12-day delay between the "discovery" of the letter and the notice of a rule violation is unavailing. The 12-day delay does not run afoul of *Wolff*'s requirement that the prisoner receive advanced notice. The brief delay did not impact the memory or presence of potential witnesses, nor did it result in the spoilation of proposed evidence. Spell's complaint regarding the 12-day delay asserts that an internal rule requires notice to be provided within 24 hours of discovery of the violation. "Discovery of the violation" actually did not occur when the letter was first removed from the mail by mailroom staff, but when the special investigative service reviewed the letter and determined it constituted it a violation. And mere violation of an internal rule, if one occurred, would not establish a constitutional claim. Here, Spell received advanced notice of the violation once the investigation into the letter's content had been completed by the SIS officer.

The parameters of the right to representation at the disciplinary hearing are of particular importance to Spell's claim that he was improperly denied his request for a staff representative. Assuming the truth of his allegation that he was told he would spend more time in the SHU if he did not waive his request for representation, his waiver did not amount to a waiver of a constitutional right. Spell is not illiterate, and the disciplinary hearing did not involve complex issues: Spell wrote the letter and knew of its content and its meaning. His claim regarding his requested representative does not amount to a due process violation warranting the expungement of the disciplinary violation.

As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter*, 425 U.S. at 322, n.5. Moreover, substantive due process

is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990); *Tyler v. Hooks*, 945 F.3d at 171-72. As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy. Here, DHO Huff provided an extensive explanation of why the letter amounted to a violation of the rule prohibiting contraband being introduced into the prison. While Spell's letter does not specifically state that the recipient will be instructed on how to smuggle the substances referenced into the prison, the experience and expertise of prison officials in how such subjects are broached cannot be discarded. Spell's explanation, which he did not provide right away, was validly rejected by Huff. A hearing officer who is present for a hearing and has the ability to observe the witnesses as they testify is in the position to make such credibility determinations. As such, Spell's disciplinary violation and the revocation of 41 days of GCT will remain undisturbed.

**B.      First Amendment claim**

Prisoners have a limited First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "Because there is a substantial governmental interest in censoring certain materials from an inmate's outgoing mail, *e.g.*, materials detrimental to the security, good order, and discipline of the institution, or dangerous to the public, there is *a fortiori* a legitimate penological interest in opening and inspecting an inmate's outgoing mail for such material." *Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999). The test for determining whether there is a substantial governmental interest was set forth by the Supreme Court in *Turner v. Safely*,

482 U.S. 78, 85 (1987).  The four factors given to assist in that determination are: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there's an "absence of ready alternatives" to the regulation, which "is evidence of [its] reasonableness."  *Id*. at 89-90.

"[O]utgoing correspondence that magnifies grievances or contains inflammatory racial views cannot reasonably be expected to present a danger to the community inside the prison . . . . Dangerous outgoing correspondence is more likely to fall within readily identifiable categories: examples noted in [*Procunier v.*] *Martinez*, [416 U.S. 396, 412, 413 (1974)] include escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion."  *Thornburgh*, 490 U.S. at 411-12.  Spell rests his argument on the holding in *McNamara v. Moody*, 606 F.2d 621 (5th Cir. 1979) which involved prison officials intercepting a letter a prisoner tried to send to his girlfriend that contained criticism of the prison's mail censorship program and alleged the mail censoring officer engaged in inappropriate sexual conduct while reading the mail.  There, the Fifth Circuit held that a suppression of an outgoing letter that was, in the view of the censoring officer, "in poor taste" was "clearly proscribed by the First Amendment."  *Id*. at 625.  "Censorship for violation of prison disciplinary rules is properly limited to communications that relate to more concrete violations such as 'escape plans, plans for disruption of the prison system or work routine, or plans for the importation of contraband.'"  *Id*. at 624, quoting *Guajardo v. Estelle*, 580 F.2d 748, 757 (5th Cir. 1978).

Spell states in his Opposition that his petition should be granted because censorship of mail by prison officials is only justified in limited circumstances where a substantial governmental interest unrelated to suppression of expression exists and the limitation on First Amendment freedom of speech is no greater than necessary for the protection of the governmental interest involved. ECF 9 at 2. Spell asserts that he was entitled to be notified of the rejection of his letter; the letter's author must be allowed to protest the refusal; and the complaint must be decided by an official other than the one who decided to refuse delivery. *Id*. at 2-3. Although Spell relies on *McNamara* as support for his contention, that case did not involve a letter like Spell's. Here, Spell was not simply venting grievances about the way FCI-Cumberland conducts mail censorship, nor was he communicating unflattering and vulgar references about staff. Rather, Spell's letter involved a more nefarious scheme that was reasonably construed as the initial steps toward smuggling intoxicating substances into the prison to be sold to a captive audience. The dangers involved in introducing such substances into a prison setting require no imagination. Indeed, DHO Huff noted that:

> The action/behavior on the part of any inmate to introduce drugs threatens not only the health, safety and welfare of himself, but that of all other inmates and staff within the institution. The mere presence of drugs in a correctional facility creates an environment conduc[ive] to violence. In the past, inmates under the influence of drugs have become violent towards others, which cannot and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.

ECF 7-1 at 48.

Spell's First Amendment right of free speech was not violated when his letter was not mailed out to its intended recipient, and he received a disciplinary violation for its content.

## CONCLUSION

Having found no basis for federal habeas corpus relief or for relief regarding any civil rights violation, the petition shall be denied and dismissed by separate Order which follows.

<u>November 13, 2024</u>                             _____/s/_____
Date                                                                Stephanie A. Gallagher
                                                                           United States District Judge